■ In the Matter of LIBERTY BUCHANAN et al., Petitioners, v BRIAN WING, as Commissioner of the New York State Department of Social Services, et al., Respondents. [664 NYS2d 865] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Broome County) to review a determination of respondent State Commissioner of Social Services which denied petitioners' request for continuance of their public assistance benefits.

Petitioners and their four minor children are recipients of Aid to Families with Dependent Children (hereinafter ADC) (Social Services Law § 343 *et seq.*) and food stamps from the Broome County Department of Social Services (hereinafter the Department). In February 1996, petitioners received notice from the Department that they were to participate in an identity verification procedure known as the automated finger imaging system (hereinafter AFIS) as a condition of eligibility for benefits required by 18 NYCRR 351.2 (a).[1] Petitioners responded that they would not participate because of their religious convictions. Respondent Commissioner of the Department thereafter discontinued their ADC and food stamp entitlements for failure to comply.

Petitioners requested a fair hearing. At the hearing, petitioner Liberty Buchanan testified that since 1970 she was

---

1. The AFIS uses a computer system that electronically takes fingerprints of index fingers on both hands of recipients using a computerized video image process, thereby eliminating the need for ink or cards (*see*, 18 NYCRR 384.1 [a]).

a Christian following a "Full Gospel" denomination which was "Pentecostal, Assembly of God". She stated that she did not regularly attend a church but studied and ministered at home and also watched the "700 Club" on television. Buchanan testified that it was her belief that "finger imaging may be the same thing in the Book of Revelations called the mark of the beast in Revelations 13 where you're inserted a small chip into your hand or finger" by use of laser technology. She further testified that "[a]ccording to what I believe, in the Bible, if I were to take the mark of the beast, which is what I believe finger imaging may be, it would be damnation to my eternal soul. I would be damned."

Petitioner Kenneth Urbach testified that his beliefs were identical to those of Buchanan. For its part, the Department demonstrated that a computer system took fingerprints electronically using a video image process and that no lasers or invasive technology were involved.[2] Furthermore, no mark was left on the person.

Following the hearing, respondent State Commissioner of Social Services affirmed the Department's decision. Petitioners then commenced this proceeding seeking to annul the determination which was transferred to this Court pursuant to CPLR 7804 (g).

We confirm. 18 NYCRR 351.26 (a) states, in relevant part, as follows:

"[A] * * * recipient of public assistance is exempt from complying with any requirement concerning eligibility for public assistance if the * * * recipient establishes that good cause exists for failing to comply with the requirement. Except where otherwise specifically set forth in any provision of this Title, good cause for failure to comply with an eligibility requirement exists when * * *

"(3) other extenuating circumstances, beyond the control of the * * * recipient, exists which prevent the * * * recipient from being reasonably expected to comply with an eligibility requirement."

18 NYCRR 351.26 (b) requires recipients to notify their social services district of their reasons for failing to comply with an

---

**2.** Throughout these proceedings, various compromise solutions were offered and rejected by the parties. Petitioners offered to put their fingerprints on inkpads or on clay molds for transference to the AFIS but the Department indicated that there was no feasible technology in place to accomplish this. At the hearing, Buchanan offered to allow her left index finger alone to be imaged but she later withdrew this offer after the Department agreed to the compromise.

eligibility requirement and *also to furnish evidence to support their claim of good cause.*

Here, we conclude that respondents' determination that petitioners failed to demonstrate a good cause basis for exemption from the finger imaging requirement was rational and must be sustained. While petitioners testified to their belief that implantation of microchips and interaction with laser technology would brand them with the "mark of the beast" and thereby infringe upon their religious principles, they nevertheless failed to set forth any competent proof that the AFIS actually involved any invasive procedures marking them in violation of their beliefs. Notably, Buchanan testified that finger imaging "might" involve lasers and microchips and acknowledged that she had never seen finger imaging performed and had "no idea" whether a laser was involved. Petitioners did not voice a religious objection to using computers or other types of technology and, in fact, they testified that they collected their benefits by using a device similar to an automated teller machine (ATM). Similarly, petitioners did not object to having their photographs taken or having their fingerprints taken with inkpads or clay molds. Given these circumstances, we cannot conclude that respondents acted irrationally in concluding that petitioners did not establish good cause to be exempted from the finger imaging requirement.

We have examined petitioners' constitutional claims and find them to be without merit. In our view, petitioners' failure to articulate a viable claim that they are being required to participate in an invasive procedure that is prohibited by their religious beliefs is dispositive of their arguments claiming a violation of their freedom to exercise their religion pursuant to the Federal and State Constitutions (US Const 1st Amend; NY Const, art I, § 3). We are also unpersuaded by petitioners' contention that the Department violated NY Constitution, article XVII, § 1 (which provides that aid and care of the needy are public concerns and shall be provided by the State) by discontinuing their public assistance benefits. Since petitioners cannot be classified as needy until such time as they are finger imaged to determine whether they are receiving duplicate benefits, no violation of this constitutional provision has been stated. Moreover, contrary to petitioners' arguments, the discontinuance of public assistance to their entire family unit (*see,* 18 NYCRR 352.30)[3] does not infringe the constitutional rights of their children (who are not named petitioners) in light of

---

3. The "Administrative Directive to Commissioners of Social Services" states that "[i]f one required member of a case refuses to comply with the fin-

valid legislation premising the eligibility of the children within the family unit upon the eligibility of the entire household (*see, Matter of Jessup v D'Elia*, 69 NY2d 1030).

Mikoll, Casey, Yesawich Jr. and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

ger imaging requirement, the entire case is to be denied, because verification of eligibility by means of the finger imaging is a condition of eligibility for the household". (96 ADM-4, at 4 [Jan. 25, 1996].)