OPINION OF THE COURT
Jasen, J.
On this appeal,, we are asked to resolve a narrow issue of statutory interpretation involving section 207-a of the *83 General Municipal Law. The specific question is whether the phrase “regular salary or wages” in subdivision 2 of that statute, defining the accidental disability retirement allowance to be paid a disabled fireman, includes salary increases paid to active firemen when such increases were negotiated after the award of the disability allowance. We hold that it does.
The facts are not in dispute. On December 23, 1977, petitioner, while in the course of his employment as a fireman for the respondent City of Newburgh, seriously injured his knee. Although he briefly returned to work in February of 1978, reoccurrence of pain in and lack of support from the injured knee prevented petitioner from performing his duties. At that time, petitioner was 33 years old and his annual salary was $13,867. On May 3, 1979, petitioner was granted an accidental disability retirement allowance under section 363 of the Retirement and Social Security Law.
Thereafter, pursuant to subdivision 2 of section 207-a of the General Municipal Law,[1] the city paid petitioner the difference between his accidental disability retirement allowance and his regular salary of $13,867. Effective January 1, 1980, an across-the-board salary increase was awarded to the Newburgh fire fighters. By letter dated January 24, 1980, the city notified petitioner that payments made to him pursuant to section 207-a of the General Municipal Law would not include any salary increases, but would continue to be computed on the basis of petitioner’s salary at the time he was awarded the accidental disability retirement allowance.
Petitioner then commenced the present article 78 proceeding, seeking to compel the respondents — Frederick Miles, Acting City Mamager, and the City of Newburgh — to recompute the payments made to him under section 207-a of the General Municipal Law by taking into account *84 salary increases paid to active fire fighters employed by the city. Supreme Court granted the relief requested, ordering respondents to pay petitioner the difference between his accidental disability allowance and his regular salary, including increases in annual salary retroactive to January 1, 1980 and any future salary increases as they occurred. On appeal, a unanimous Appellate Division reversed, on the law, and dismissed the proceeding, stating: “Based upon the language of subdivisions 1, 2 and 3 of section 207-a of the General Municipal Law, along with the legislative history of the 1977 amendment to that section * * * we hold that the phrase ‘regular salary or wages’ as employed in subdivision 2 of section 207-a of the General Municipal Law refers to a disabled fireman’s salary as of the time of his retirement and should not reflect prospective salary increases of firemen.”[2] (80 AD2d 855.) We disagree.
Prior to the amendment of section 207-a of the General Municipal Law (see L 1977, ch 965, eff Jan. 1, 1978), the statute provided that any paid fire fighter disabled in the course of duty was to be “paid by the municipality or fire district by which he [was] employed the full amount of his regular salary or wages until his disability *** ceased.” (General Municipal Law, former § 207-a.) As construed by the courts, the phrase “regular salary or wages” included any subsequent increases in salary that were given to active fire fighters of the same grade or title after the disability arose. (Matter of Barber v Lupton, 282 App Div 1008, affd 307 NY 770.) In addition, payments under former section 207-a continued so long as the fire fighter did not recover from his injury, even if he remained disabled for the rest of his life. (Matter of Birmingham v Mirrington, 284 App Div 721, 728.)
The former statute was the subject of a great deal of criticism. (See, e.g., Governor’s Memorandum upon approving L 1977, ch 965, NY Legis Ann, 1977, p 336; Report by Permanent Commission on Public Employee Pension and Retirement Systems [recommendation for reform of section 207-a of the General Municipal Law].) The excessive cost of carrying disabled firemen on the public payroll *85 at full salary, sometimes for life, often prevented local municipalities from employing an adequate force of able-bodied fire fighters. Moreover, the former statute, by guaranteeing full salary after disability, provided no incentive to an injured fire fighter to accept the lesser amounts paid under the disability retirement provisions, and the municipality was without power to involuntarily retire a fireman even though he was permanently disabled. As a result, funds readily available to disabled fire fighters under the New York State Policemen’s and Firemen’s Retirement System were not being utilized. Finally, an injured fireman was free to accept outside employment while he continued, under the former statute, to receive his full salary from the municipality.
The original course of statutory reform proposed to the Legislature was that section 207-a be repealed and that the provisions of section 207-c of the General Municipal Law, which govern disability payments to policemen, be made applicable to firemen as well. (See Governor’s Memorandum upon approving L 1977, ch 965, NY Legis Ann, 1977, p 337.) Interestingly, subdivision 2 of section 207-c of the General Municipal Law provides that all payments of salary or wages are to terminate upon the injured policeman being granted an accidental disability retirement allowance or pension. However, apparently as a result of various compromises between the sponsors of the amendment and representatives of the firemen (see Memorandum of State Comptroller in support of Bill No. 8978 in Assembly), the original proposal to repeal section 207-a never received legislative approval.
Although the present statute contains, for the most part, the language found in former section 207-a (see General Municipal Law, § 207-a, subds 1, 7), five new subdivisions have been added. Subdivision 2, which is the focus of this appeal, authorizes the municipality to apply for an accidental disability allowance or pension on behalf of the injured fireman and states that, if the allowance or pension is granted, the “[playment of the full amount of regular salary or wages * * * shall be discontinued.” In that event, however, subdivision 2 requires that the fireman be paid by the municipality “the difference between the amounts *86 received under [the] allowance or pension and the amount of his regular salary or wages” (emphasis supplied) until he either reaches the age of mandatory retirement or attains the age or performs the service specified by law for the termination of his service.
Petitioner contends that the term “regular salary or wages” contained in subdivision 2 of section 207-a of the General Municipal Law was intended by the Legislature to include salary increases granted to active fire fighters after the award of a disability retirement allowance or pension. In support of his position, petitioner relies primarily on the judicial interpretation of the phrase prior to the amendment and on various memoranda submitted to the Legislature in connection with the revision of the statute. For their part, respondents assert that injured fire fighters who are collecting an accidental disability retirement allowance or pension are not entitled to salary increases under subdivision 2 of section 207-a of the General Municipal Law, but are limited to payment from the municipality based on their salary at the time of the disability award. In support of this contention, respondents cite the unsuccessful history of two proposed amendments to the statute (see Bill No. 4764 in Assembly, dated Feb. 24, 1977; Bill No. 10709 in Assembly, dated March 25, 1980), as well as the difference in the language employed in subdivisions 1, 2 and 3 of section 207-a of the General Municipal Law. We agree with the view advanced by petitioner.
Turning first to the express language of the statute, subdivisions 1, 2 and 3 of section 207-a provide for the payment of “regular salary or wages” to certain categories of disabled firemen. Although subdivision 3, which deals with an injured fireman capable of performing “light duty”, states that such an individual is entitled to “regular salary or wages, including increases thereof and fringe benefits”, there is no indication that the Legislature, by adding this supplemental phrase to subdivision 3, intended thereby to limit the payments made under subdivision 2 of the statute. Indeed, no similar qualifying clause appears in subdivision 1 of the statute, and respondents concede that under that subdivision the phrase “regular salary or wages”, without more, includes all salary increases *87 granted after a disability arises.[3] Thus, juxtaposing the express language found in the various subdivisions of section 207-a offers no meaningful guidance in ascertaining what the Legislature intended by the use of the phrase “regular salary or wages” in subdivision 2 of the statute.
A review of the legislative history leading úp to the amendment of section 207-a, however, is rather enlightening. The relevant memoranda submitted to the Legislature in connection with the amendment indicate that the primary aim of the new statute was to shift a large portion of the financial burden generated by disabled fire fighters from the municipal payrolls to the appropriate retirement system or pension fund. (See, e.g., Governor’s Memorandum on approving L 1977, ch 965, NY Legis Ann, 1977, p 337; Sponsor’s Memorandum in support of Bill No. 8978 in Assembly; Memorandum of Department of State recommending approval of Bill No. 8978 in Assembly.) Aside from partially shifting the source of the payments made to disabled fire fighters, there is no indication that the Legislature also intended to reduce the amount of such payments. Indeed, the relevant memoranda are to the contrary; they indicate that the new law was to have no effect on the income received by a disabled fire fighter. (See, e.g., Sponsor’s Memorandum in support of Bill No. 8978 in Assembly; letter of the Permanent Commission on Public Employee Pension and Retirement Systems, dated Aug. 4, 1977 [recommending that Bill No. 8978 in Assembly be vetoed by the Governor]; letter of New York State Association of Counties, dated July 18, 1977.)
Contrary to respondents’ contention, the unexplained failure on the part of the Legislature to adopt the two proposed amendments to section 207-a of the General Municipal Law is not dispositive of the meaning to be given to the phrase “regular salary or wages”. True, both these proposals clearly provided that the phrase in issue included salary increases that an injured fireman would *88 have otherwise been entitled to had he not retired (see Bill No. 4764 in Assembly, dated Feb. 24, 1977; Bill No. 10709 in Assembly, dated March 25, 1980) and, therefore, the failure to enact these proposals might evince an intent on the Legislature’s part to limit the payments made under subdivision 2 of section 207-a. On the other hand, the term “regular salary or wages” had already been interpreted by the courts to include subsequent salary increases. Thus, it is equally possible that the Legislature was of the view that it was unnecessary to add anything to the express language of the statute. In the face of such conflicting inferences, no particular significance can be attributed to the Legislature’s failure to adopt these amendments.
As one court has noted, “[s]ection 207-a of the General Municipal Law is a remedial statute enacted for the benefit of firemen and should be liberally construed in their favor.” (Pease v Colucci, 59 AD2d 233, 235; see, also, Cook v City of Binghamton, 48 NY2d 323, 332.) Viewed from this perspective, and in light of the legislative history discussed above, we conclude that the 1977 amendment to section 207-a of the General Municipal Law was intended only to affect the source, not the amount, of payments made to disabled fire fighters. In the absence of some clear indication from the Legislature signaling a departure from the meaning that has been attributed to the phrase “regular salary or wages”, we hold that that phrase, as employed in subdivision 2 of section 207-a of the General Municipal Law, includes prospective salary increases given to active fire fighters subsequent to the award of an accidental disability retirement allowance or pension.
For the reasons stated, the order of the Appellate Division should be reversed, without costs, and the judgment of Supreme Court, Orange County, reinstated.
Chief Judge Cooke and Judges Gabrielli, Wachtler, Fuchsberg and Meyer concur; Judge Jones taking no part.
Order reversed, etc.

. Subdivision 2 of section 207-a of the General Municipal Law provides that a permanently disabled fireman granted an accidental disability retirement allowance or accidental disability pension “shall continue to receive from the municipality or fire district by which he is employed, until such time as he shall have attained the mandatory service retirement age * * * or shall have attained the age or performed the period of service specified by applicable law for the termination of his service, the difference between the amounts received under such allowance or pension and the amount of his regular salary or wages.” (Emphasis supplied.)

. The Third Department recently arrived at the same conclusion. (See Harzinski v Village of Endicott, 83 AD2d 305.)

. One possible explanation as to why only subdivision 3 of section 207-a of the General Municipal Law contains the phrase “including increases thereof and fringe benefits” is that the Legislature desired to avoid any suggestion that a disabled fire fighter who accepts “light duty” in a lower-salaried position would be subject to a reduction in pay. (See Sponsors Memorandum in support of Bill No. 8978 in. Assembly.) That potential difficulty does not arise, however, when dealing with fire fighters covered by subdivisions 1 and 2 of the' statute.