*140 OPINION OF THE COURT
Eugene M. Fahey, J.
In these related proceedings brought pursuant to articles 75 and 78 of the CPLR, petitioner, Richard Musilli, petitions the court for a judgment directing respondent, City of Buffalo, to comply with General Municipal Law § 207-a (2) by implementing certain money payments, while petitioner City seeks to stay a grievance arbitration brought by respondent, Local 282, on behalf of Richard Musilli.
Petitioner Musilli’s petition is granted. The determination of respondent City denying petitioner Musilli certain money payments pursuant to General Municipal Law § 207-a (2) is annulled as arbitrary and capricious. The matter is remanded back to respondent City for a full evidentiary hearing. Relief is limited to such hearing.
Petitioner City of Buffalo’s petition to stay arbitration is denied.
Facts
The relevant record shows that petitioner Musilli was hired by the Buffalo Fire Department as a firefighter on September 11, 1989, when he was 42 years old. Almost immediately he began to complain of a variety of claimed, work-related injuries, accumulating some 48 months of section 207-a leave in his first nine years with the department. Musilli then left duty permanently on August 18, 1999. His application for firemen’s permanent disability incurred in the performance of duty, based on four episodes of injury to his back in 1993, 1997, 1998 and 1999, was submitted to the Fire Retirement System on March 9, 1999. It was then approved by the New York State Comptroller’s office on November 29, 2001, upon a finding that Musilli was permanently incapacitated for the performance of his duties, pursuant to section 363-c of the Retirement and Social Security Law.
In May 1993, respondent City of Buffalo and respondent Local 282 of the Firefighters’ Association had executed a memorandum agreement to the collective bargaining agreement between them. The agreement established a procedure where the Fire Department could challenge the authenticity of an injured-on-duty claim by allowing a City doctor’s examination and review. If the Fire Department then made an adverse determination, the employee could then elect for an evidentiary hearing. The above procedure thus effectively parallels the statutory scheme in section 207-a (1).
*141 The court notes that the Fire Department declined to invoke the protocols of the memorandum agreement relating to any of Musilli’s back injury claims from 1993 through 1998.
The court notes the position contained in the affidavit of Fire Commissioner Worthy that the Fire Department did not contest Musilli’s claims because the challenge process was costly and time consuming and the department would only contest claims that were clearly in its favor. By sitting on its rights here, the department may have so colored the record as to eviscerate the State Comptroller’s ability to later reach a contrary conclusion on permanent accidental disability retirement.
It was only after the application for retirement was approved by the State Comptroller’s office and after petitioner Musilli requested the section 207-a salary supplement on June 11, 2002 that the Fire Department made any formal response.
By letter dated June 25, 2002, and signed by the heads of the Departments of Law, Fire and Human Resources, Michael B. Risman, Calvin G. Worthy and Louis R. Giardina, respondent City determined to deny the application on the following basis:
“Additionally, NYS General Municipal Law § 207-a(2) gives discretion to the City of Buffalo to make supplemental payments to you, equal to the difference between your Fire Department wage and your disability retirement payment amount. The City of Buffalo has reviewed your file, and other relevant evidence, and determined you to be ineligible for GML § 207-a(2) supplemental payments. The City of Buffalo has determined that you do not meet one or more of the criteria necessary to establish a GML § 207-a injury. Accordingly, application for GML § 207-a(2) benefits is hereby denied.”
Conclusions of Law
The relevant case law is set out in General Municipal Law § 207-a: “Payment of salary, medical and hospital expenses of fireman with injuries or illness incurred in performance of duties.”
Subdivision (1) of section 207-a reads in pertinent part that:
“Any paid fireman * * * who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment, shall be paid by the municipality * * * by *142 which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased * * * [T]he municipal health authorities or any physician appointed for the purpose * * * may attend any such injured or sick fireman * * * and the municipality * * * shall not be liable for salary or wages * * * after such date as * * * such physician shall certify that such injured or sick fireman has recovered and is physically able to perform his regular duties * *
Subdivision (2) reads that:
“Payment of the full amount of regular salary or wages, as provided by subdivision one * * * shall be discontinued with respect to any fireman who is permanently disabled as a result of an injury or sickness incurred or resulting from the performance of his duties if such fireman is granted * * * a retirement for disability incurred in performance of duty allowance pursuant to section three hundred sixty-three-c of the retirement and social security law * * * provided, however, that in any such case such fireman shall continue to receive from the municipality * * * by which he is employed, until such time as he shall have attained the mandatory service retirement age applicable to him * * * the difference between the amounts received under such allowance or pension and the amount of his regular salary or wages * * *.”
Section 363-c (b) (1) of the Retirement and Social Security Law reads that:
“A member shall be entitled to retirement for disability incurred in the performance of duty if, at the time [of] application * * * he is [p]hysically or mentally incapacitated for performance of duty as the natural and proximate result of a disability not caused by his own willful negligence sustained in such service * * *.”
Subdivision (d) provides for verification of the disability by one or more medical examinations: “If the comptroller determines that the member is physically or mentally incapacitated for the performance of duty pursuant to subdivision b * * * and ought to be retired, he shall be so retired * * * as of a date approved by the comptroller.”
The statutory framework set out by the above paragraphs would appear to afford the municipality the opportunity to *143 determine that a fireman is not temporarily disabled in section 207-a (1), but no such opportunity as to permanent disability under section 207-a (2), where the Comptroller’s determination simply triggers the requirement that the municipality make up the difference between retirement pay and regular wage.
Indeed, in a comprehensive review of the legislative history of the adoption of section 207-a (2) in 1977, in Mashnouk v Miles (55 NY2d 80, 87 [1982]), the learned Judge Jasen concluded:
“The relevant memoranda submitted to the Legislature in connection with the amendment indicate that the primary aim of the new statute was to shift a large portion of the financial burden generated by disabled fire fighters from the municipal payrolls to the appropriate retirement system or pension fund. Aside from partially shifting the source of the payments made to disabled fire fighters, there is no indication that the Legislature also intended to reduce the amount of such payments. Indeed, the relevant memoranda are to the contrary; they indicate that the new law was to have no effect on the income received by a disabled fire fighter.” (Citations omitted.)
See also, Matter of Klonowski v Department of Fire of City of Auburn (58 NY2d 398 [1983]), also holding that the retired fireman was entitled to the difference between regular salary and disability allowance. With the weight of the decisions above, the court has been unable to discern any precedent for the proposition that a municipality has a right to an independent contrary determination after the State Comptroller’s grant of an accidental disability retirement allowance, until running up against Cook v City of Utica (88 NY2d 833 [1995]).
In that case, without addressing Mashnouk (supra) or Klonowski (supra), the Court of Appeals created a separate municipal proceeding to determine the firefighter’s eligibility under section 207-a (2) holding: “[T]here is no specific statutory language or history suggesting that the eligibility determination for the distinct classes of benefits were not intended to be separately made” (Cook supra at 835).
Even if the court might differ in its own interpretation of the law, it is still compelled to follow Cook (supra). But Cook (supra) provided the City of Utica with a hearing, it did not allow a *144 process where City officials privately meet and deny an application. Given the earlier case law establishing the firefighter’s entitlement to the City payment, and the liberal construction of section 207-a in the firefighter’s favor (see Cook v City of Binghamton, 48 NY2d 323 [1979]), the court finds that only a full evidentiary hearing properly secures petitioner Musilli’s due process rights.
As to petitioner City’s motion to stay the arbitration, no stay is warranted. Respondent Musilli as a retiree has standing (see City of Buffalo v A.F.S.C.M.E. Council 35, 107 AD2d 1049 [4th Dept 1985]).
Petitioner Musilli’s petition is granted; the determination of respondent City denying petitioner Musilli certain money payments pursuant to General Municipal Law § 207-a (2) is annulled as arbitrary and capricious; the matter is remanded back to respondent City for a full evidentiary hearing. Relief is limited to such hearing.
Petitioner City of Buffalo’s petition to stay arbitration is denied.